UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
ALEX LOBERA,
     Debtor.                No. 7-10-13203 SL

**MEMORANDUM OPINION REGARDING
GILA REGIONAL MEDICAL CENTER'S
MOTION TO DISMISS OR CONVERT
<u>CASE TO CHAPTER 11</u>**

This matter came before the Court for final hearing on a
Motion 1) to Dismiss under Section 707(a) or 2) to Convert to
Chapter 11 under Section 706(b) (the "Motion") filed by creditor
Gila Regional Medical Center ("GRMC")(docs 14, 16) to which
Debtor objected (doc 19). GRMC is represented by its attorney
Thuma & Walker, P.C. (David T. Thuma and Merrie Chappell).
Debtor is represented by his attorney the Law Office of George
("Dave") Giddens, P.C. (Christopher M. Gatton). Creditor Barton
and Associates, Inc. ("Barton") did not formally join in GRMC's
motions, but filed a brief in support (doc 27). Barton is
represented by its attorney Modrall Sperling Roehl Harris and
Sisk, P.A. (Jason C. Bousliman). This is a core proceeding. 28
U.S.C. § 157(b)(2)(A). For the reasons set forth below, the
Court finds that both motions should be denied.

<u>**INTRODUCTION**</u>

The issues in this case involve examining the provisions of
the dismissal (11 U.S.C. § 707)[1] and conversion (Section 706)

---

[1]Hereafter, references to the Bankruptcy Code will be
                                 (continued...)

sections of the Bankruptcy Code as applicable to business, non-consumer, individual chapter 7 debtors.  Neither the Court of Appeals for the Tenth Circuit or the Tenth Circuit Bankruptcy Appellate Panel have addressed the specific issue of whether there is a good faith filing requirement for business, non-consumer, individual chapter 7 debtors or, if there is, what the requirement is or how it would relate to "cause".

There is currently a split in the circuits on these issues. The Third[2] and Sixth[3] Circuits have found a good faith filing requirement for Chapter 7 which failure to meet is a cause for dismissal.  Many bankruptcy courts have also so found.  See In re Khan, 172 B.R. 613, 620 (Bankr. D. Minn. 1994)(collecting

---

[1](...continued)
"Section ___."

[2]See Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 207 (3rd Cir. 2000)("Section 707(a) allows a bankruptcy court to dismiss a petition for cause if the petitioner fails to demonstrate his good faith in filing.")(citing Industrial Insurance Services, Inc. v. Zick (In re Zick), 931 F.2d 1124, 1126-27 (6th Cir. 1991)).  See also Perlin v. Hitachi Capital America Corp. (In re Perlin), 497 F.3d 364, 369 (3rd Cir. 2007)("Although a debtor's lack of good faith is not mentioned in the statute, in Tamecki, we held that a debtor's lack of good faith in filing a bankruptcy petition is a proper cause for dismissal under section 707(a).) and at 371 ("[W]e hold that, in deciding a motion to dismiss under section 707(a), a bankruptcy court may consider a debtor's substantial income and expenses together with other factors in assessing good faith.")

[3]See Industrial Insurance Services, Inc. v. Zick (In re Zick), 931 F.2d 1124, 1127 (6th Cir. 1991)("We are persuaded that there is good authority for the principle that lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court.")

Page -2-

cases)(hereafter "Minnesota Khan[4]").  The consensus of these
cases is either that 1) while excess disposable income alone is
not "cause" under section 707(a) it may be considered as a factor
in determining bad faith, which is "cause" or 2) a debtor's good
faith (as defined by that case on its particular facts) is a
prerequisite to Chapter 7 bankruptcy relief.

---

[4]This distinction is made to highlight the difference
between this case and the earlier case of <u>In re Khan</u>, 35 B.R. 718
(Bankr. W.D. Ky. 1984) ("Kentucky Kahn") discussed below.

On the other hand, the Eighth[5] and Ninth[6] Circuit have found no good faith filing requirement for chapter 7 debtors.

---

[5]See Huckfeldt v. Huckfeldt (In re Huckfeldt), 39 F.3d 829, 832 (8th Cir. 1994)(The court approved a narrow or cautious approach to bad faith adopted in Minnesota Khan: "Bad faith under 707(a) [is] limited to extreme misconduct falling outside the purview of more specific Code provisions, such as using bankruptcy as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction. ... As this case illustrates, some conduct constituting cause to dismiss a Chapter 7 petition may readily be characterized as bad faith. But framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7. Thus, we think the § 707(a) analysis is better conducted under the statutory standard, 'for cause.' If the bankruptcy court elects instead to act under the inherent judicial power to punish a bad faith litigant, that action should not be taken under § 707(a)." 172 B.R. at 624-26 )

[6]Neary v. Padilla (In re Padilla), 222 F.3d 1184, 1193 (9th Cir. 2000)(" The Bankruptcy Code's language and the protracted relationship between reorganization debtors and their creditors lead us to conclude that bad faith per se can properly constitute 'cause' for dismissal of a Chapter 11 or Chapter 13 petition but not of a Chapter 7 petition under § 707(a).")(The court also ruled that the misconduct complained of should be analyzed under the most specific code section that addresses that type of conduct; if the behavior is specifically addressed by either sections 523 or 727, it should be dealt with under those sections and not section 707.) Id. at 1192. See also Sherman v. Securities and Exchange Commission (In re Sherman), 491 F.3d 948, 970 (9th Cir. 2007)("Padilla prescribes a two-part inquiry: First, we must consider whether the circumstances asserted to constitute 'cause' are 'contemplated by any specific Code provision applicable to Chapter 7 petitions.' If the asserted 'cause' is contemplated by a specific Code provision, then it does not constitute 'cause' under § 707(a). If, however, the asserted 'cause' is not contemplated by a specific Code provision, then we must further consider whether the circumstances asserted otherwise meet the criteria for 'cause' for discharge under § 707(a).")(Citations omitted.)

Page -4-

**FINDINGS OF FACT**

Debtor filed this voluntary Chapter 7 proceeding on June 25, 2010. The petition states that Debtor's debts are not primarily consumer debts[7]. Schedule I states that Debtor is a physician. He is a single person but has lived with his companion since 2007. The household also includes seven children[8] ranging in age from two to eighteen. Schedule J lists Debtor's expenses and shows that he has $18,579 of excess monthly income. Schedule F lists unsecured debts of over $1.3 million.

The Motion (filed July 21, 2010) states that the case should be dismissed for "cause" or converted to Chapter 11. The "cause" listed in the Motion is that Debtor's income exceeds claimed expenses by $18,579, that the expenses listed are "excessive[9]", that Debtor's claimed expenses are inflated, and that Debtor claims expenses related to an automobile but owns no automobile. Therefore, under a totality of the circumstances, it would be contrary to the best interests of creditors to allow Debtor to obtain a discharge. The Motion seeks dismissal with a one year

---

[7]Consumer debts are defined and discussed below.

[8]Four of the children are Debtor's; three are hers. Debtor supports all of them. He has not formally adopted any of her children.

[9]The Motion also suggests a "reasonable estimate" for each expense, _e.g._, Debtor lists a mortgage expense of $4,684 but the Motion claims that $2,500 would be more reasonable. In sum, the Motion argues that Debtor could save an additional $15,033 per month if he were to limit himself to reasonable expenses.

Case 10-13203-j7   Doc 50   Filed 03/16/11   Entered 03/16/11 15:28:46 Page 5 of 66

bar for refiling. Alternatively, the Motion seeks conversion to Chapter 11 because Debtor could "easily" pay creditors $33,000 per month.

Debtor objected to the Motion on August 8, 2010. Debtor's first argument is that Section 707(a) requires "cause" and none of the facts alleged by GRMC constitute "cause." Debtor claims that the facts alleged by GRMC are relevant only to Section 707(b) which requires the Court to dismiss a case for abuse if there is sufficient excess monthly income. However, Section 707(b) applies only to consumer debtors, not to non-consumer debtors. Therefore, Debtor claims that his excess income and alleged overstated expenses are not relevant[10]. Debtor also claims that since the filing of his bankruptcy, he has learned of tax debts of approximately $798,000 for which he is liable.

The Court held a preliminary hearing on August 23, 2010, fixing September 16, 2010 as the date for a final hearing. GRMC deposed Debtor on September 8, 2010.

On September 14, 2010, Barton filed a Memorandum in Support of the Motion (doc 27). Barton argues that "cause" exists to dismiss the case, citing In re Hammonds, 139 B.R. 535 (Bankr. D. Colo. 1992) because the filing was done in bad faith and was made in an effort to deny payment to creditors despite an ability to

_____

[10]Debtor also states that he wrecked his car, but pays auto expenses to use other persons' cars.

Page -6-

pay.  Barton also argues that this case is "substantial abuse"
because a debtor's ability to pay a substantial portion of debt
is grounds for dismissal.  It further argues that courts have
commonly dismissed non-consumer cases under section 707(a) for
"bad faith" for reasons paralleling the factors of "substantial
abuse" under section 707(b).  Barton argues that Debtor's
business status should have no bearing on the Court's decision.

On September 14, 2010, Debtor also filed a Memorandum in
Support of his objection to the Motion (doc 28).  Debtor's
primary argument is that because his debts are primarily
business, the "means test" and his ability to pay are explicitly
not relevant and cannot be grounds for dismissal or conversion.
Debtor quotes section 707(a)'s examples of "cause" that justify
dismissal as including: 1) unreasonable delay prejudicial to
creditors, 2) nonpayment of fees or charges required, and 3)
failure of debtor to file required information (but only on
motion by the United States Trustee).  Debtor argues that ability
to pay is fundamentally different from the items specified and
should not be included as a ground.  Debtor then states that when
courts look to the legislative history of section 707 to
determine what is "cause", they find that the legislative history
specifically states that ability to repay debts in whole or in
part does not constitute cause for dismissal (quoting H.R. No.

Case 10-13203-j7   Doc 50   Filed 03/16/11   Entered 03/16/11 15:28:46 Page 7 of 66

95-595, 95th Cong., 1st Sess. 380 (1977) and S.R. No. 95-989, 95th Cong., 2d Sess. 94 (1978)).

Debtor does concede, doc 28 p. 4, that some courts hold that while ability to pay alone is not cause, it can be a factor considered in a totality of circumstances (citing <u>McDow v. Smith</u>, 295 B.R. 69, 79 (E.D. Va. 2003)). However, Debtor argues that the only ground listed in the Motion is Debtor's ability to repay debt.

Regarding conversion to Chapter 11, Debtor argues that the same factors should be considered to deny GRMC's motion to convert. Ordering conversion would allow a creditor to circumvent the consumer debtor element necessary to find abuse.

On September 15, 2010, GRMC filed its Brief in Support of the Motion (doc 32). By this date, GRMC had a transcript of the Debtor's deposition. The Motion focused on Debtor's income and expenses. The Brief, however, changes the primary focus away from Debtor's income to "the Debtor's petition, schedules, statement of affairs, and anticipated amendments" and asks the Court to conclude that Debtor's "antics" are cause for dismissal. GRMC argues that the papers on file contain inconsistencies and are incomplete. For example, the petition failed to disclose Debtor's full name, the Debtor failed to list cash transferred to his companion's account, he failed to list a watch, he failed to list an Army pension, he failed to list stock in Lobera Imaging,

Page -8-

Inc. or Microsoft stock, he failed to list an interest in his father's estate, he failed to list four vehicles, and he failed to list an $18,000 bonus. The Brief does reiterate the fact that Debtor makes a "ton" of money and informs the Court that Debtor testified at his deposition that he has not curbed his lifestyle. GRMC claims that the most telling evidence of bad faith was Debtor's failure to list his 2008, 2009 and year to date 2010 income on the Statement of Financial Affairs, or to disclose payments, gifts and transfers to insiders, or to disclose his involvement with a business.

GRMC argues that the Court must engage in a case-by-case analysis to determine what constitutes "cause" to warrant dismissal. Citing several cases, GRMC also argues that lack of good faith in commencing a Chapter 7 case is cause for dismissal under section 707(a). GRMC also argues that all of these factors permit conversion to Chapter 11.

On September 15, 2010, Debtor also filed an Amended Statement of Financial Affairs ("SFA"), doc 33, and Amended Schedules B, D, E and F, doc 34. The Amended SFA discloses Debtor's income for 2008, 2009, and 2010 year to date; it discloses on question 9 [sic, should be question 10] a transfer of a house valued at $100,000.00 on Mary Stewart Street in El Paso, Texas to his father Alejandro Lobera; discloses Debtor's

Case 10-13203-j7    Doc 50    Filed 03/16/11    Entered 03/16/11 15:28:46 Page 9 of 66

involvement with a business, Lobera Imaging; and lists a former spouse on question 16.

The Amended Schedule B adds Debtor's interest in stock of Lobera Imaging, Inc. (value $0.00), and Microsoft (value $0.00); his interest in a retirement account (value $1,331.81); his interest in a 401-K account (value $11,000.00) and an Ameritrade account (value $400.00).

The Amended Schedule D transfers the debt owed to Barton from Schedule F (unsecured) to Schedule D (secured). The Amended Schedule E adds $733,945.00 of priority tax debt owed to the IRS and State of New Mexico. Amended Schedule F deletes the Barton debt.

**THE FINAL HEARING**

The Motion came on for hearing on September 16, 2010. As the first item of business the Court raised the issue of the change in focus from the Motion, which had focused only on excess income, to the Brief, which raised the new allegations of bad faith and intentional mischief of filing false and misleading bankruptcy papers. Debtor's counsel agreed that, although raised rather late, GRMC could introduce testimony on bad faith. The parties then stipulated that excess income alone is not cause to convert, and Debtor's counsel stipulated that Debtor did have income to fund a plan.

Debtor testified first.  The first subject of examination was his name.  His 2008 and 2009 tax returns (ex. 22) show his name as "Alex Lobera Rodriguez", but the petition lists his name as "Alex Lobera."  Debtor testified that he was originally from Puerto Rico and in Puerto Rico one customarily uses both parents' last names.  He originally filed tax returns in Puerto Rico, and used that convention.  When he moved to the mainland United States he dropped his mother's name.  However, the Internal Revenue Service continues to list him with both last names.  He further testified that there was not a single debt on his bankruptcy schedules that was incurred in a name other than Alex Lobera or Lobera Imaging, Inc. (except, obviously, IRS debt which was not included on the original petition.)

Debtor admitted he signed the Schedules (ex. 16).  He admitted that a property listed on Schedule A as "281 Mariposa Drive" was actually "281 Maricopa Drive."

Debtor listed one wristwatch on his Schedule B valued at $500.00  He testified that he actually owns two, but one is broken.  He paid $500.00 for the one that still works.

Debtor listed his household goods on Schedule B at $15,000.00.  He testified that he really did not know for sure the current values of the used goods, but sat down in his attorney's office and attempted to estimate what things were

Case 10-13203-j7    Doc 50    Filed 03/16/11    Entered 03/16/11 15:28:46 Page 11 of 66

worth, _e.g._, a seven year old television.  He also stated that maybe one-half of it belonged to his companion.

Debtor listed $2000.00 of firearms on Schedule B.  Again, he estimated the values and explained to the Chapter 7 Trustee at the first meeting of creditors how he had arrived at the values.

Debtor's original Schedule B listed no retirement plans.  At Debtor's deposition he was asked about retirement plans and recalled he did have an IRA or 401(k) when he was in the Army.  He had lost track of it and had not received any statements for years, and forgot to list it on Schedule B.

Debtor's original Schedule B did not list his interest in Lobera Imaging, P.C.  Lobera Imaging, P.C. is a debtor in Case No. 7-10-12751-SL, currently pending in the Bankruptcy Court for the District of New Mexico.  The SFA in that case, question 16, states that Debtor is the 100% owner of Lobera Imaging, P.C.  At the time of the hearing, Lobera Imaging was not operating, had no income, and its only assets were old accounts receivable.  Debtor testified that he had not understood that information regarding Lobera Imaging, P.C. had to be duplicated on his personal schedules, particularly in light of the fact that it was worthless and he had no intention of having anything more to do with it.  He had listed it as a co-debtor where appropriate and included all its debts on his schedules.

Page  -12-

Debtor's original Schedule B also omitted some small amount of Microsoft stock. His amended Schedule B lists the stock but places no value on it.

Debtor admitted to giving a Mini Cooper to his companion and a 1994 Mercedes to his eighteen year old son. He was not asked when these transfers were made. Debtor pays insurance on all the vehicles. Debtor also pays ongoing health insurance for himself, his companion, all the children and his ex-wife. Debtor purchased a laptop computer and paid the tuition for his 18 year old son to attend college. He did not consider these to be gifts, but rather in the nature of support. Debtor also pays the tuition for a 19 year old to attend college.

Exhibit 1 is Debtor's contract ("Contract") with Virtual Radiologic Professionals, L.L.C. ("Practice"). It recites that: 1) Debtor is an independent medical practitioner specializing in radiology, 2) Practice is a professional medical practice that provides radiology interpretation and consulting services, and 3) Practice desires to engage Debtor as an independent contractor in accordance with the terms and conditions of this Contract and Debtor is agreeable to such engagement. The term of the contract is five years, but is terminable without cause by either party upon one hundred eighty days notice. Debtor's Schedule G listed no executory contracts. Debtor testified he had not understood the Contract needed to be listed separately; he believed he had

listed his relationship by disclosing his income on Schedule I which discloses the Practice, its address, and his compensation. Under the terms of the Contract, if Debtor performs additional work above that required, he will receive bonuses based on the amount and type of work he performed. He had been employed by Practice for three months when he filed his case, <u>see</u> Ex. 16, Schedule I, and did not receive a bonus until after the filing. At the time of filing he hoped he would receive a bonus, but was not expecting it and did not know what amount it would be. He also testified that the bonus was for an unusual three month period when he was the only radiologist at the facility, which has since hired a new person. He did not expect a bonus for the next three month period.

At the hearing there was a great deal of questioning about the Mary Stewart Street property that Debtor disclosed as a transfer on the Amended SFA. Despite the questioning, no clear picture emerged as to what actually took place or when. Debtor purchased the house years ago for his father, to repay a previous loan. The house was in Debtor's name. Debtor's father is currently 94 years old. There were two mortgages on the property. Debtor made the mortgage payments, but fell behind on the second mortgage because he could not pay it. The second mortgagee foreclosed and the property was sold. Debtor (or perhaps his companion) employed an attorney for the father, who

dealt with the purchaser at the foreclosure, and eventually the father purchased the property in his own name with his own funds from that purchaser. Debtor still pays the first mortgage. Debtor testified that this subject never came up in his deposition.

Because Debtor's father is alive, there was no improper omission of Debtor's interest in the father's estate because there is no such estate.

The original SFA Question 1 did not list Debtor's previous income. In response to questioning, he testified that when he filed the petition his taxes had not been done for several years. He made a mental note to ask the attorney how he should handle this and simply forgot. The attorney apparently did not catch it, and the SFA was filed with Question 1 unanswered. Debtor finally received his tax returns from the preparer on the date of his deposition. He amended the SFA to include the prior years income and he calculated current year income from Lobera Imaging, P.C. from January to March, and Practice from March forward.

Barton obtained a judgment against Debtor and Lobera Imaging and recorded a transcript of judgment. Debtor did not learn of the transcript until after the bankruptcy, which is why he originally listed Barton as unsecured. Barton also obtained a writ of garnishment against Debtor and Lobera Imaging on which it collected between $30,000 and $40,000 before the bankruptcy

filing. Barton also attempted to collect from Lobera Imaging's account receivables. Debtor's bank then froze the account and closed it.

Debtor received $400,000 from Lobera Imaging in April, 2010. This transaction is reported on the Lobera Imaging SFA as a draw. Debtor testified that he did not use any of it to pay Barton. He stated that he had offered a payment plan to Barton but Barton would not agree to it unless Debtor granted a mortgage on his house. He refused. He testified that he used the funds for various things including becoming current on the mortgage on Maricopa, bringing the first mortgage current on his residence, paying a debt owed to his father, paying an attorney in Utah for child custody matters for his companion, performing house and pool repairs and landscaping, taking the children to Puerto Rico for a family visit, paying about $33,000 to Memorial, etc. He testified emphatically that he was not contemplating personal bankruptcy at the time of this payment[11]. He also believed at this time that Lobera Imaging had about $4 million of accounts receivable, of which at least $1.2 to $1.3 million should have been collectible. Debtor anticipated that all the creditors would be paid.

---

[11]To the extent this is true - the Court finds it is - the Debtor cannot be viewed as unloading assets before bankruptcy by making fraudulent or preferential transfers.

Debtor testified that the arrangement he has with his companion involves her being the billpayer. He transfers money into her account every month, then they confer during the month to discuss additional funds needed and where they are financially. He testified that usually by the end of the month they are bouncing checks for their expenses. Debtor also testified that due to this arrangement, he was not sure exactly what the monthly bills were, but felt he had a good estimate.

When asked why he filed the bankruptcy, Debtor testified that he could not pay his bills. He owed too much, there was a judgment against him and he knew he owed taxes. He could not support his family. He also testified that he thought he had carefully reviewed all schedules and statements and that they were correct. He was not trying to conceal anything; furthermore, he did not have anything left to conceal. He also testified that any omissions or failures to disclose were unintentional. Certain items, e.g. the Mini Cooper, were not listed because they were in his companion's name and she in fact owned them. During the hearings, creditors suggested that Debtor should have listed himself as being in a common law marriage and therefore should have listed all of his companion's assets and liabilities. Debtor testified that although they live as married, there was never any intention to actually be married and

that his attorneys had advised him to file as an unmarried person.

Debtor testified that he forgot to list on Schedule J a yearly contribution he makes to a medical school in Puerto Rico.

On re-examination, counsel for both creditors pressed Debtor on specific amounts paid with the $400,000 draw. While Debtor had some general ideas, it became clear that he really did not know the specifics. Debtor's counsel attempted to call Ms. Lorina Quiroz, Debtor's companion, as a witness to answer these questions. She had not been listed on the witness list, however, and the creditors objected. Initially the Court sustained the creditors' objections, then recessed to review the situation. The Court reviewed the pleadings and realized that until the day before trial, the only issue was that of excess income and relief under Section 707(a). There would have been no need for Ms. Quiroz to testify regarding expenses, thus reasonable that she had not been on the witness list. The Court went back into session and announced that it had reconsidered and would allow Ms. Quiroz to testify. The parties all agreed to continue the hearing to allow her to be deposed, and allowed the scope to be anything relevant to bad faith as well as the disposition of the $400,000. The final hearing was continued to October 14, 2010.

On October 14, 2010 the Court resumed the final hearing. The first matter of business was a stipulated admission of

deposition exhibits 26 through 32. Ms. Lorina Quiroz then testified. She does not consider herself married to Debtor, although in certain social circumstances they refer to each other as spouses. Debtor has filed tax returns as a single person. Ms. Quiroz pays all bills and takes care of everything related to the "account." Neither Debtor nor Ms. Quiroz may sign each other's checks. Every month Debtor deposits an amount into her account, usually $20,000, and she pays the bills, mortgages, utilities, etc. Sometimes she writes a check to cash and gives it to one of the children to cash and buy groceries and return the excess cash to her. She keeps all of her receipts. She has a savings account attached to her checking account that has about $100 in it. She has no other accounts. Neither she nor Debtor gamble. Sometimes Debtor will transfer additional amounts, as needed, during the month. On cross-examination Ms. Quiroz was asked if she knew if Debtor filed gift tax returns for his gifts to her. She responded that she did not know, but assumed not because the transfers were not gifts, they were to pay "his household expenses, our household expenses."

Ms. Quiroz had prepared a schedule that listed all disbursements from the $400,000. It was admitted as Exhibit A. The schedule totaled $407,000. She testified that, even with these payments, Debtor was still behind on a vehicle with GMAC and with Heritage, the second mortgage on Debtor's house.

She testified that Debtor had not transferred any assets to her, other than the money into her account, before his Chapter 7. She also testified that he had not transferred anything to her to "hide" assets from the Court or creditors.

The Court found Ms. Quiroz to be completely credible and forthright in her testimony. She is intelligent, well organized, and very capable in dealing with ordinary financial matters. The Court also found Debtor to be completely credible, although confused on some matters, particularly his own financial affairs. He no doubt relies on Ms. Quiroz to handle things, and this appears to have worked out sufficiently in the past for him to have a continuing reasonable basis that things are being dealt with financially. Although normally a debtor would usually keep track of his or her own affairs, he relied on her and she appears to have done the job. The Court had no sense that Debtor, or for that matter Ms. Quiroz, had attempted to hide assets from the Court or creditors, or had attempted to hide transactions that would result in recoveries by a trustee. Both seemed completely honest. The Court also finds that Debtor appeared, and actually admitted, that the financial matters over the last year have caused him great stress and embarrassment, and this may have impeded his ability to be more effective in the preparation of his bankruptcy. It is also apparent that he relied on his counsel, perhaps more than he should have, but in a way which was

not unreasonable under the circumstances.  In sum, the Court found Debtor to be an honest debtor deserving of bankruptcy relief.

In addition, the Court finds that Debtor has been an employee or independent contractor at all relevant times, first for Lobera Imaging and now for his current employer.  He himself is not a "business."  Debtor does not have business assets, other than some small amount of used office equipment.  He has an employment contract which is obviously not assignable under Section 365(c)(1)(A), and no other business contracts or leases.  He has no business to reorganize.  He chose to liquidate.

**DISCUSSION**

Before launching into the details, the Court will review some basic bankruptcy definitions and processes.  "The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose."  11 U.S.C. 101(8).  A debtor's debts are "primarily consumer debts" if they exceed fifty percent of the total debt.  <u>Stewart v. United States Trustee (In re Stewart)</u>, 175 F.3d 796, 808 (10th Cir. 1999).  Consequently, the entire universe of debtors consists of consumer debtors and non-consumer debtors[12].  In this case Debtor's debts are not primarily consumer debts.

_____

[12]The Court will use the term "business debtor" as interchangeable with "non-consumer debtor."

Section 301(a) describes how a voluntary case is initiated: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter." The term "entity" includes a "person." Section 101(15). The term "person" includes an "individual." Section 101(41). A "petition" is the document filed with the court to commence the case. Section 101(42).

Section 109 determines what entities may file under what chapters. Section 109(b) states that "A person may be a debtor under chapter 7 of this title only if such person is not-[certain things not relevant to this case, e.g., a foreign bank]. Section 109(d) states that "Only a railroad, [or] a person that may be a debtor under chapter 7 of this title (except a stockbroker or a commodity broker) ... may be a debtor under chapter 11 of this title." Sections 109(b) and 109(d) have no additional requirements to file a chapter 7 or 11.[13] See Toibb v. Radloff, 501 U.S. 157, 159-60 (1991)(The Supreme Court resolved a conflict between the Courts of Appeals on whether an individual debtor not engaged in business was eligible to reorganize under Chapter 11, citing In re Toibb, 902 F.2d 14 (8th

---

[13]Debtor is not a farmer or a municipality and is therefore not eligible to file a Chapter 9 or 12 case. Sections 109(c), (f). Debtor has too much unsecured debt for Chapter 13. Section 109(e).

Cir. 1990)(which upheld dismissal of nonbusiness debtor) as conflicting with In re Mooq, 774 F.2d 1073 (11th Cir. 1985)(which allowed nonbusiness debtor to pursue Chapter 11)).  The Supreme Court applied the Bankruptcy Code as written:

> In our view, the plain language of the Bankruptcy Code disposes of the question before us.  Section 109, 11 U.S.C. § 109, defines who may be a debtor under the various chapters of the Code. ...
> The Code contains no ongoing business requirement for reorganization under Chapter 11, and we are loath to infer the exclusion of certain classes of debtors from the protections of Chapter 11, because Congress took care in § 109 to specify who qualifies-and who does not qualify-as a debtor under the various chapters of the Code.  Section 109(b) expressly excludes from the coverage of Chapter 7 railroads and various financial and insurance institutions.  Only municipalities are eligible for the protection of Chapter 9. § 109(c).  Most significantly, § 109(d) makes stockbrokers and commodities brokers ineligible for Chapter 11 relief, but otherwise leaves that Chapter available to any other entity eligible for the protection of Chapter 7.  Congress knew how to restrict recourse to the avenues of bankruptcy relief; it did not place Chapter 11 reorganization beyond the reach of a nonbusiness individual debtor.

Toibb, 501 U.S. at 160-61.

Furthermore, a chapter 7 or 11 debtor need not allege insolvency.  Green v. Staples (In re Green), 934 F.2d 568, 572 (4th Cir. 1991).  Compare Section 109(c)(3) (A municipality may be a chapter 9 debtor if and only if insolvent.)  Similarly, a chapter 7 or 11 debtor need not allege that the filing of the petition[14] was in good faith.  Compare Section 1325(a)(7) (The

---

[14]But, a chapter 11 plan must be proposed in good faith to
(continued...)

Case 10-13203-j7   Doc 50   Filed 03/16/11   Entered 03/16/11 15:28:46 Page 23 of 66

Court confirms a chapter 13 plan if "the action of the debtor in filing the petition was in good faith."). See also Green, 934 F.2d at 572 (Section 109 has no reference to anticipated income). The Court therefore finds that there is no express requirement in the Bankruptcy Code of insolvency or good faith to file a non-consumer[15] chapter 7 case and a bankruptcy court should not impose these requirements when Congress did not.

Debtor has elected to file a petition under chapter 7. GRMC and Barton have moved to dismiss the case for cause under section 707(a), which provides:

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including--
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

"Cause" is not defined by the bankruptcy code. And, the word "including" is not limiting. Section 102(3) ("In this title 'includes' and 'including' are not limiting.); see also Padilla,

_____

[14](...continued)
be confirmable. Section 1129(a)(3).

[15]As discussed below, a consumer debtor must also satisfy section 707(b) which requires the court to examine a debtor's good faith in certain circumstances.

222 F.3d at 1191.  Therefore, the first task for the Court is to determine what constitutes "cause" for dismissal.  The Court will first discuss things which are not "cause" under section 707(a).  Then the Court will suggest what is "cause" under section 707(a).

**A.   Things which are not "cause."**

**1.   Excess disposable income is not "cause."**

Barton, in its joinder brief, argues that despite Debtor's status as a non-consumer debtor, he is abusing the bankruptcy system and process by filing chapter 7 when he has considerable excess income from which he could repay creditors.  GRMC's Motion made the same argument.

In 1984, Congress amended the Bankruptcy Code and added a new section 707(b) to address concerns that consumer debtors were abusing the system.  Comment, The Case Against "Bad Faith" Dismissals of Bankruptcy Petitions under Section 707(a), 59 Am. U. L. Rev. 685, 693-94 (2010).  It specifically applied only to consumer debtors whose filing of a chapter 7 was viewed as a "substantial abuse[16]" of the system.  Id. at 694.  It allowed the court to dismiss or allow conversion to a Chapter 11 or 13 case if it found substantial abuse.  Id.

_____

[16]The 1984 statute did not define "substantial abuse."  This omission left the definition up to the courts, which resulted in hundreds of attempts to define it, usually by complicated many-part tests.  One common element to all the tests, however, was the debtor's ability to repay debts through a plan.

In 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, 119 Stat. 23 (2005) which further amended section 707(b).  That section now reads, in part:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.  In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).
>
> (2)(A)(I) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by [certain expenses and payments of priority claims and secured debts], and multiplied by 60 is not less than the lesser of--
>
> > (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,025, whichever is greater; or
> >
> > (II) $11,725.
>
> ...
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in paragraph (2)(A)(I) does not arise or is rebutted, the court shall consider--
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such

> rejection as sought by the debtor) of the debtor's
> financial situation demonstrates abuse.

The current Section 707(b) allows the Court to dismiss for "abuse" instead of "substantial abuse." And, the current statute sets out a mechanical test ("means test") for abuse: if current monthly income less certain current items that are specifically allowed exceeds a certain dollar amount or percentage of unsecured debt, the Court must presume abuse[17]. By its literal terms, however, Section 707(b) applies to consumer debtors only. In fact, the Supreme Court referred to Section 707(b) as the "heart of [BAPCPA's] consumer bankruptcy reforms." Ransom v. FIA Card Services, ___ U.S. ___, 131 S.Ct. 716, 721 (2011)(citing H.R. Rep. No. 109-31, pt. 1, p.2 (2005)).

This Court finds that the language of Section 707 is plain, clear and unambiguous. Section 707(a) applies to all Chapter 7 debtors and allows the court to dismiss for "cause." Section 707(b) applies only to consumer debtors and allows the court to dismiss for "abuse." A non-consumer debtor's case can only be dismissed for "cause" while a consumer debtor's case can be dismissed for "cause" or "abuse." See In re Adolph, 441 B.R. 909, 913 (Bankr. N.D. Ill. 2011)(After BAPCPA this is the most reasonable interpretation of Section 707). This interpretation

---

[17]The statute then allows the debtor to attempt to rebut the presumption, but those provisions are irrelevant for this opinion.

of the statute also comports with Congress' intent to stop
consumer abuse.

> [I]n interpreting a statute a court should always turn
> first to one, cardinal canon before all others.  We
> have stated time and again that courts must presume
> that a legislature says in a statute what it means and
> means in a statute what it says there.  See, e.g.,
> United States v. Ron Pair Enterprises, Inc., 489 U.S.
> 235, 241-242, 109 S.Ct. 1026, 1030-1031, 103 L.Ed.2d
> 290 (1989); United States v. Goldenberg, 168 U.S. 95,
> 102-103, 18 S.Ct. 3, 4, 42 L.Ed. 394 (1897); Oneale v.
> Thornton, 6 Cranch 53, 68, 3 L.Ed. 150 (1810).  When
> the words of a statute are unambiguous, then, this
> first canon is also the last: "judicial inquiry is
> complete."  Rubin v. United States, 449 U.S. 424, 430,
> 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); see also Ron
> Pair Enterprises, supra, 489 U.S., at 241, 109 S.Ct.,
> at 1030.

Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

See also Lamie v. United States Trustee, 540 U.S. 526, 534
(2004):

> It is well established that "when the statute's
> language is plain, the sole function of the courts-at
> least where the disposition required by the text is not
> absurd-is to enforce it according to its terms."
> Hartford Underwriters Ins. Co. v. Union Planters Bank,
> N. A., 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1
> (2000) (internal quotation marks omitted) (quoting
> United States v. Ron Pair Enterprises, Inc., 489 U.S.
> 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), in
> turn quoting Caminetti v. United States, 242 U.S. 470,
> 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

In this case, the Court believes the inquiry is complete.
Section 707(b) does not apply to non-consumer debtors.

If the Court were to apply 707(b) to non-consumer debtors it
would have to rewrite the statute to omit the term "whose debts
are primarily consumer debts" found in Section 707(b)(1).  Courts

may not rewrite or ignore the plain text of a statute even if they believe the statute is susceptible to improvement. Commissioner v. Lundy, 516 U.S. 235, 252 (1996). Furthermore, it is a fundamental rule that a court should give effect to every clause and word in a statute. Duncan v. Walker, 533 U.S. 167, 174 (2001)(citing United States v. Menasche, 348 U.S. 528, 538-39 (1955)). And, the court should be especially unwilling to ignore a term that occupies a pivotal place in the statutory scheme. Id. BAPCPA was designed to prevent consumer abuse and the heart of that scheme was Section 707. This Court should be especially unwilling to ignore the term "whose debts are primarily consumer debts" in Section 707(b) because that would defeat the purpose of the statute.

Furthermore, a court should not expand application of a statute beyond the range where Congress indicated it would stop. 62 Cases, More or Less, Each Containing Six Jars of Jam v. United States, 340 U.S. 593, 600 (1951). Nor should a court distort the ordinary meaning of a statute. Id. The ordinary meaning of Section 707(b) involves consumer debtors only. The Court should not expand application to non-consumer debtors.

Finally, if Congress intended 707(b) to apply to non-consumer debtors it would have said so. And, if that had been Congress' intention, there would not even be a need for section

707(b); section 707(a) could simply say that a case could be dismissed for cause or abuse.  It did not.

## 2.  Bad faith is not "cause."

### A.  Bad faith is not listed as a cause in Section 707(a).

The only mention of "bad faith" in all of Chapter 7 is in Section 707(b)(3)(A).  Its location indicates that the analysis for bad faith arises only in a consumer debtor case when the presumption of abuse does not arise or is rebutted.  If Congress intended "bad faith" to be a reason for dismissal of any Chapter 7 case, it would have added that term to section 707(a) which applies to all chapter 7 cases.  It did not.  When Congress uses a term in one place in a statute and not in another, the omission is deemed to be intentional.

> It is well settled that " '[w]here Congress includes
> particular language in one section of a statute but
> omits it in another section of the same Act, it is
> generally presumed that Congress acts intentionally and
> purposely in the disparate inclusion or exclusion.' "
> <u>Bates v. United States</u>, 522 U.S. 23, 29-30, 118 S.Ct.
> 285, 139 L.Ed.2d 215 (1997) (quoting <u>Russello v. United
> States</u>, 464 U.S. 16, 23, 104 S.Ct. 296, 78 L.Ed.2d 17
> (1983)).

<u>Duncan</u>, 533 U.S. at 173.  <u>See also</u> <u>Stephens v. Holbrook (In re Stephens)</u>, 402 B.R. 1, 7 (10th Cir. BAP 2009):

> One basic principle of statutory construction is that,
> where the legislature includes specific language in one
> provision and omits it another, it is presumed that it
> acted intentionally with respect to the omission.  <u>See,
> e.g.</u>, <u>In re Ballard</u>, 526 F.3d 634, 640 (10th Cir. 2008)
> (citing <u>Russello v. United States</u>, 464 U.S. 16, 23, 104
> S.Ct. 296, 78 L.Ed.2d 17 (1983)).  Thus, the Iowa
> legislature's inclusion of a residency requirement in

its personal property exemption statute, while making no reference to residency in its homestead statute, is presumed to be intentional.  <u>In re Francisco</u>, 390 B.R. 700, 703 (10th Cir. BAP 2008).

The entire Bankruptcy Code uses the term "bad faith" in only three places: 1) involuntary petitions filed in bad faith (Section 303(i)(2)), 2) bad faith conversions from Chapter 13 (Section 348(f)(2)), and 3) bad faith dismissals of chapter 7 consumer debtors (Section 707(b)(3)(A)).  Because Congress used the term "bad faith" elsewhere, the Court must presume that Congress did not intend it to apply in Section 707(a) where the term was not used.

## B.    <u>Historically bad faith has not been "cause" to dismiss a chapter 7 case.</u>

On July 1, 1898, Congress passed Chapter 541, 30 Stat. 544, "An Act To establish a uniform system of bankruptcy throughout the United States."  ("Act").  With various amendments, this was the law until passage of the Bankruptcy Reform Act of 1978 (Pub. L. No. 95-598, 92 Stat. 2549 (November 6, 1978)).  Act Section 4 provided that "Any person who owes debts, except a corporation, shall be entitled to the benefits of this Act as a voluntary bankrupt."  The statute made no reference to the good or bad faith of the person filing.  The only reference to good faith was in Section 12(d), which allowed the judge to confirm a composition only if "the offer and its acceptance are in good faith and have not been made or procured except as herein

provided, or by any means, promises, or acts herein forbidden." Therefore, good faith was simply not an issue for a liquidating debtor. See Bank of Elberton v. Swift, 268 F. 305, 305-06 (5th Cir. 1920)(Act case). In Swift the Bank moved to set aside an adjudication of Swift as a voluntary bankrupt. "At the time the bankrupt filed his petition his mother was 98 years old and at the point of death, and that she actually died shortly thereafter." Id. at 306. The bankrupt knew that he would be left a legacy of about $20,000.[18] Id. His total assets were a watch and wearing apparel worth less than $100. Id. The District Court denied the motion to dismiss. Id. The Fifth Circuit affirmed. Id. Citing the Act, the court stated that the statute provided that "any qualified person may file a petition to be adjudged a voluntary bankrupt," and once the case is filed, the bankrupt is entitled to be discharged except for acts specifically set forth in the Act. Id.

> It was practically admitted in the oral argument that there was no remedy within the letter of the act, but it was earnestly insisted that appellant's petition showed an attempt to violate its spirit and to use the process of the court to perpetrate a fraud. It was not denied that a party might take advantage of a voluntary proceeding in bankruptcy for the very purpose of having any property he might accumulate thereafter relieved from his debts, but it was said that there must be a line drawn between a general purpose of that kind and a specific intent, such as is alleged to exist here,

---

[18]The Act did not contain a provision parallel to Code Section 541(a)(5)(A), which includes bequests received within 180 days of filing as property of the estate.

Page -32-

where the acquisition of the property by appellee
followed so closely in time upon the filing of his
petition.  To that argument it need only be replied
that the law authorizes the petition to be filed and
adjudication made, and a discharge granted. The act
fixes the rights of the parties.  It has carefully
enumerated the things that can be done and the things
that cannot be done, and it is not for the courts to
add to the one or to the other.  Congress enacted the
bankruptcy statute in the exercise of a public policy,
for the benefit, not of debtors and creditors, but of
society at large.  It realized, of course, that
unscrupulous and dishonest men would take advantage
wherever they could of its provisions. Equally of
course, it was not intended to enable a debtor to rush
into bankruptcy just in time to prevent his creditors
from satisfying their claims out of property he was
about to come into possession of.  But the difficulty
in any law upon so complicated a subject as business
relations is to make it cover every particular case
that may possibly arise. It does not seem to us that
the act takes into account the motives of creditors in
involuntary proceedings, or of debtors in voluntary
proceedings; but instead of that, in view of the fact
that such a practical subject as business relations
between debtor and creditor is being dealt with, it
concerns itself rather with conditions as they exist,
and undertakes to fix definitely the obligations of the
debtor and the rights and remedies of the creditor. In
our judgment, it was thought best by Congress to
prescribe general rules, which would usually promote
satisfactory results, notwithstanding the fact that in
isolated instances it would be difficult, if not
impossible, to attain to the high standards of exact
justice.

Id. at 307-08.  See also Alabama v. Montevallo Mining Co. (In re

Montevallo Mining Co.), 278 F. 989, 990 (M.D. Ala. 1922):

    The Montevallo Company had the undoubted right
under the Bankruptcy Law to file its petition in
bankruptcy and to be adjudged a bankrupt, whether
solvent or insolvent, and whether its purpose was pure
or impure, fraudulent or honest. The motive with which
a lawful act is done is of no controlling importance,
for it is fundamentally sound to say that a lawful act
cannot be rendered unlawful, although prompted by an

Page  -33-

unworthy motive. Numerous authorities sustain this
proposition. In this case, if the bankrupt, however
solvent, or however impure its motive may have been, or
whatever may have been the actuating purpose, saw fit
to surrender its assets into the custody and
jurisdiction of the court for the benefit of its
creditors, the creditors as a matter of law have no
cause for complaint.

Cf. Green, 934 F.2d at 570:

    Courts have been grappling with the issue of what
constitutes "substantial abuse" for purposes of Section
707(b) of the Bankruptcy Code since 1984.  In that year
Congress amended the 1978 Bankruptcy Code to add, inter
alia, Section 707(b) to the preexisting Section 707(a)
on dismissal of Chapter 7 petitions.  Bankruptcy
Amendments and Federal Judgeship Act of 1984, Pub.L.
No. 98-353, 98 Stat. 355 (1984) (codified as amended in
scattered sections of 11 U.S.C. and 28 U.S.C. (1982)).
Section 707(b) reads as follows:

        (b) After notice and a hearing, the court, on its own
        motion or on a motion by the United States trustee, but
        not at the request or suggestion of any party in
        interest, may dismiss a case filed by an individual
        debtor under this chapter whose debts are primarily
        consumer debts if it finds that the granting of relief
        would be a substantial abuse of the provisions of this
        chapter.  There shall be a presumption in favor of
        granting the relief requested by the debtor.

11 U.S.C.A. § 707(b) (West Supp.1990).

    Section 707(b) is one of several consumer credit
amendments Congress added to the Code in response to
pressure from retailers and consumer lenders who
complained of an increasing number of Chapter 7
bankruptcies being filed by non-needy debtors. Prior to
1984, debtors enjoyed a virtually unfettered right to a
"fresh start" under Chapter 7, in exchange for
liquidating their nonexempt assets for the benefit of
their creditors.  Section 707(b) introduced an
additional restraint upon a debtor's ability to gain
Chapter 7 relief, by allowing a bankruptcy court to
deal equitably with the situation in which an
unscrupulous debtor seeks to gain the court's

assistance in a scheme to take unfair advantage of his
creditors.

(Footnote omitted.)  <u>And compare</u> <u>In re Victory Const. Co., Inc.</u>,
9 B.R. 549, 551-52 (Bankr. C.D. Cal. 1981), <u>vacated as moot</u>, 37
B.R. 222 (9th Cir. BAP 1984):

> "Good faith" as a standard of confirmation in
> debtor rehabilitation or reorganization proceedings, or
> as a condition to the debtor's right to file and
> maintain proceedings aimed at rehabilitation or
> reorganization, has appeared in many provisions of the
> Bankruptcy Act of 1898; and the courts have explored
> the meaning of the term in a wide variety of fact
> situations and circumstances. While many of the cases
> merely use the term or refer to "good faith" provisions
> of the statutes without contributing to an
> understanding of its meaning, a large number of cases
> attempt and make a meaningful analysis and contribute
> to an understanding of the concept. ...
>      As the cases disclose, however, judicial analysis
> of the meaning, scope, and dimension of "good faith" in
> rehabilitation or reorganization cases has not
> differentiated between the "good faith" required to
> confirm a plan of arrangement, and the "good faith"
> required at the outset as a condition of the right to
> file and maintain the proceeding.  Moreover, an
> understanding of the cases requires some knowledge of
> the provisions of the statutes to which they refer and
> an appreciation of the purposes and philosophies
> embodied in these laws.

In conclusion, historically, good faith was required only in
reorganization cases, and then in 1984 Congress added a good
faith requirement for consumer debtors in liquidation
proceedings.

### C.   Statutory interpretation suggests that bad faith is not "cause".

Section 707(a) provides:

> The court may dismiss a case under this chapter only
> after notice and a hearing and only for cause,
> including--
> (1) unreasonable delay by the debtor that is
> prejudicial to creditors;
> (2) nonpayment of any fees or charges required under
> chapter 123 of title 28; and
> (3) failure of the debtor in a voluntary case to file,
> within fifteen days or such additional time as the
> court may allow after the filing of the petition
> commencing such case, the information required by
> paragraph (1) of section 521(a), but only on a motion
> by the United States trustee.

Congress defined "cause" by listing three examples of cause.
This suggests that "cause" is a class of things or items that
have some relationship to each other.  If this were not the
intent of Congress, the statute could simply state "The court may
dismiss a case under this chapter only after notice and a hearing
for any reason."  Because the statute was not written this way,
Congress must have had an idea of what "cause" was.

One approach to analyze this statute is application of the
statutory construction tool of ejusdem generis.

> Meaning literally, "of the same kind", the doctrine,
> often called Lord Tenterden's Rule, is of ancient
> vintage, going back to Archbishop of Canterbury's Case,
> 2 Co Rep 46a, 76 Eng Repr 519 (1596).  Where general
> words follow specific words in a statutory enumeration,
> the general words are construed to embrace only objects
> similar in nature to those objects enumerated by the
> preceding specific words.  Where the opposite sequence
> is found, i.e., specific words following general ones,
> the doctrine is equally applicable, and restricts
> application of the general term to things that are
> similar to those enumerated.  Ejusdem generis has been
> called a common drafting technique designed to save the
> legislature from spelling out in advance every
> contingency in which the statute could apply.

Page -36-

Norman J. Singer and J.D. Shambie Singer, Sutherland Statutory Construction § 47:17 (7th ed.)(footnotes omitted).

The doctrine of ejusdem generis applies when the following conditions exist: (1) the statute contains an enumeration by specific words; (2) the members of the enumeration suggest a class; (3) the class is not exhausted by the enumeration; (4) a general reference supplementing the enumeration, usually following it; and (5) there is not clearly manifested an intent that the general term be given a broader meaning than the doctrine requires. ...

A "class" is a conceptual creation encompassing numerous items with similar characteristics. Thus "a class" is a generalization which associates items for a particular purpose. Without some objective relationship, classification is arbitrary and meaningless. The purpose for defining the class by illustrative particularization's accompanied by a general catchall reference is to determine how extensively the act was intended or should reasonably be understood to apply. The criterion deemed applicable for deciding questions of statutory construction, legislative intent or meaning to others, is therefore useful as a more precise standard of judgment for determining what if any other applications an act should have than those identified in the enumeration of particulars.

The doctrine of ejusdem generis calls for more than merely an abstract exercise in semantics and formal logic. It rests on practical insights about everyday language usage. When people list a number of particulars and add a general reference like "and so forth" they mean to include by use of the general reference not everything else but only others of like kind. The problem is to determine what unmentioned particulars are sufficiently like those mentioned to be made subject to the act's provisions by force of the general reference. In most instances there is a wide range of ways in which classes could be defined, any one of which would embrace all of the members in an enumeration. Germaneness to the subject and purpose of the statute, viewed in terms of legislative intent or meaning to others, is the basis for determining which among various semantically correct definitions of the class should be given effect.

<u>Id.</u> at § 47:18 (footnotes omitted.)

The words Congress used in Section 707(a) are: 1) unreasonable delay, 2) nonpayment of required court fees, and 3) failure to file documents required by Section 521(a)(1)[19]. The most obvious common traits of these things is that they all are post-petition technical and procedural violations that prevent a prompt presentation of the chapter 7 liquidation case to the court. They also directly impact the court or the creditors in general. Because pre-petition bad acts or intentions by a debtor

---

[19]Section 521(a)(1) states:
(a) The debtor shall--
(1) file--
(A) a list of creditors; and
(B) unless the court orders otherwise--
    (i) a schedule of assets and liabilities;

    (ii) a schedule of current income and current expenditures;
    (iii) a statement of the debtor's financial affairs and, if section 342(b) applies, a certificate--
        (I) of an attorney whose name is indicated on the petition as the attorney for the debtor, or a bankruptcy petition preparer signing the petition under section 110(b)(1), indicating that such attorney or the bankruptcy petition preparer delivered to the debtor the notice required by section 342(b); or
        (II) if no attorney is so indicated, and no bankruptcy petition preparer signed the petition, of the debtor that such notice was received and read by the debtor;
(iv) copies of all payment advices or other evidence of payment received within 60 days before the date of the filing of the petition, by the debtor from any employer of the debtor;
(v) a statement of the amount of monthly net income, itemized to show how the amount is calculated; and
(vi) a statement disclosing any reasonably anticipated increase in income or expenditures over the 12-month period following the date of the filing of the petition[.]

Page  -38-

have nothing to do with post-petition technical and procedural violations they should not be considered cause.  Any unlisted ground for "cause" must be consistent with the examples given. See Kimlinger and Wassweiler, The Good Faith Fable of 11 U.S.C. § 707(a); How Bankruptcy Courts Have Invented a Good Faith Filing Requirement for Chapter 7 Debtors, 13 Bankr. Dev. J. 61, 97 (1996).


**D.    Cases finding that bad faith is "cause" are not persuasive.**

The cases that find a good faith filing requirement for Chapter 7 all assume that only a poor, honest and deserving debtor is entitled to bankruptcy relief.  Typical language includes:

> [t]he Bankruptcy Code is intended to serve those persons who, despite their best efforts, find themselves hopelessly adrift in a sea of debt. Bankruptcy protection was not intended to assist those who, despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors.  Good faith and candor are necessary prerequisites to obtaining a fresh start. The bankruptcy laws are grounded on the fresh start concept.  There is no right, however, to a head start.

Zick, 931 F.2d 1124, 1129-30 (citing In re Jones, 114 B.R. 917, 926 (Bankr. N.D. Ohio 1990)(in turn citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)).  These cases also apparently (and groundlessly) assume that unless the poor debtor is left destitute he or she is receiving a "head start."  Because

Page  -39-

exemption laws limit the amount of property the debtor carries into his or her new life, it is difficult[20] to see how anyone could receive a head start by filing a chapter 7; a debtor ends up with precisely those assets the legislature declared he or she was entitled to keep. If creditors believe that exemptions are too generous, they should approach Congress (or their respective state legislatures), not the courts. And, the courts should not utilize non-statutory barriers to weed out debtors they personally feel are not deserving of bankruptcy relief.[21] These cases also often find that high-income individuals are not poor, honest and deserving bankruptcy candidates despite difficult financial situations. This Court disagrees with their conclusions[22].

_____

[20]Difficult, but not impossible. If a debtor were to load up on exempt assets with an intent to discharge the related debts, a debtor could receive a head start if the creditors did not pursue discharge or dischargeability actions.

[21]Accord Minnesota Khan, 173 B.R. at 620:
    At least as evidenced by the reported caselaw, one sort of alternative, extra-statutory "cause" is recognized by many courts: "bad faith" on the part of a debtor that so taints a filing for Chapter 7 relief that the debtor is judicially deemed unworthy of receiving any part of that relief.
(Citations omitted.)

[22]Hammonds, 139 B.R. 535 (Bankr. D. Colo. 1992), cited by Barton, is an example. As discussed in more detail below, Hammonds found an "implicit jurisdictional prerequisite" for filing any case under the Bankruptcy Code. Id. 541. The court cited transfers of property, a "continuing comfortable life-style", a deliberate pattern of avoiding a creditor, less than
                                    (continued...)

Page  -40-

_Zick_ is one of the leading cases cited[23] for the proposition that there is a good faith filing requirement in Chapter 7. _Zick_, however, is not persuasive[24].  _Zick_ cites six cases for its proposition.  The Court will examine each in turn.

First, _Zick_ cites _In re Sky Group Int'l, Inc._, 108 B.R. 86 (Bankr. W.D. Pa. 1989) for the proposition that "a showing of bad faith can result in dismissal under 11 U.S.C. § 707(a)."  In fact, _Sky Group_ was an involuntary case and the issue before the Court was whether the involuntary petition had been filed in bad faith.  _Id._ at 90.  The Court found that it was not brought in bad faith, and the case was not dismissed.  _Id._  _Sky Group_ also cites _In re Khan_, 35 B.R. 718 (Bankr. W.D. Ky. 1984)(hereafter

---

[22](...continued)
full disclosure, and "prior procedural gymnastics in Bankruptcy Court" as evidence of bad faith.  _Id._  The Court did not mention the fact that any of these reasons would have been grounds for denial of discharge, denying discharge of a debt or terminating the automatic stay.

[23]_Zick_ has been cited by 206 courts as of March 1, 2011.

[24]In fact, the opening paragraph of the opinion alone makes one wonder if the Sixth Circuit understood the concepts involved in this case.  931 F.2d at 1125-26.  First, the court states that the suit is based on a creditor's motion to dismiss a **chapter 11** bankruptcy under Section 707(a).  Then, it states that the creditor objected to the dischargeability of its debt and filed a motion to dismiss for bad faith.  The bankruptcy court granted the **motion** and the district court affirmed.  "This appeal from **denial of dischargeability** of the debt ensued."  _Id._ (Emphasis added.)  It is clear from the rest of the opinion that the Debtor filed a chapter 7 case that was dismissed.  Dismissal would have precluded the need for a determination of dischargeability.

"Kentucky Khan[25]") for the proposition that "good faith is an implicit jurisdictional requirement for the bringing of a chapter 7 case." In sum, Zick relied on dicta.

Second, Zick cites In re Maide, 103 B.R. 696 (Bankr. W.D. Pa. 1989). Mr. Maide was a non-consumer debtor that could not be dismissed under Section 707(b). Id. at 697 n.4. The court noted that Mr. Maide earned over $5,050 per month and that it did not approve of the way he spent his money. Id. at 697-98. The court also found that he had not cooperated with the trustee and failed to obey a court order directing him to amend schedules. Id. at 699. "This Debtor who has acted in bad faith and is able to meet his obligations cannot use this court as an escape hatch simply because he has primarily business debts." Id. at 700. The Maide court could have properly dismissed for delay or failure to obey a court order. This case is not very authoritative for Zick.

Third, Zick cites In re Brown, 88 B.R. 280 (Bankr. D. Hi. 1988) for the proposition that good faith is an "implicit jurisdictional requirement." Brown, in turn, cites Kentucky Khan for this statement. The court then stated, without any authority, that "Congress never intended that bankruptcy be a refuge for the unscrupulous and cunning individual." Id. at 284. The Court found that Dr. Brown was not a poor, unfortunate debtor

_____

[25]As distinguished from Minnesota Khan. Kentucky Khan is discussed in detail below.

in need of a "fresh start."  Id.  Rather, he was a capable doctor

able to earn substantial income and if only he would adjust his

life style he could pay a portion of his debt to his primary

creditor, the "unfortunate victim" of his negligence[26].  Id.  In

sum, Brown adds nothing to Zick's persuasiveness.

Fourth, Zick cites In re Bingham, 68 B.R. 933 (Bankr. M.D.

Pa. 1987) for the proposition that once debtor's good faith is

questioned, the debtor bears the burden of proving good faith[27].

Bingham, like Brown, cites Kentucky Khan for the "implicit

jurisdictional requirement" of a chapter 7 case, id. at 935 n.2,

but does not otherwise address a good faith filing requirement.

Interestingly, Bingham specifically finds that timing a

bankruptcy filing to avoid application of an amendment to the

code did not amount to bad faith.  Id. at 936.

Fifth, Zick cites In re Kragness, 63 B.R. 459 (Bankr. D. Or.

1986) for the proposition that the concept of good faith is not

open to serious debate.  Kragness does state that.  Id. at 465.

However, it continues:

> "Good faith" must, however, be defined in the context
> of a Chapter 7 proceeding such as the instant case. A
> different level of conduct may be required for debtors

---

[26]Others view bankruptcy as an appropriate remedy for
negligence.  See, e.g., In re Khan, 172 B.R. 613, 627 (Bankr. D.
Minn. 1994)("Under American law, bankruptcy has always been a
haven from the financial consequences of negligence.")

[27]It is not clear to this Court how this evidentiary matter
is relevant to the issue of a good faith filing requirement.

in a Chapter 7 liquidation where all non-exempt assets
are surrendered to a trustee for liquidation as opposed
to Chapter 11 and Chapter 13 cases where the debtor
normally remains in possession of non-exempt assets.

11 U.S.C. 727 sets forth certain acts, conduct or
omissions, by a debtor, which may result in the total
denial of discharge in a Chapter 7 case.  Arguably, any
of these acts might be considered cause for dismissal
of a bankruptcy case under 11 U.S.C. 707.  In addition,
11 U.S.C. 521 prescribes certain duties that a debtor
must perform.  The failure, on the part of the debtor,
to perform any of the duties enumerated in Section 521
may be grounds for dismissal of a Chapter 7 bankruptcy.

The majority of the cases cited by plaintiff
appear to be Chapter 11 or Chapter 13 cases.  In
addition, many of the cases cited by plaintiff can be
classified by factual patterns.  In some of the cases
where the court dismissed the proceedings on a finding
of bad faith, it appeared that the debtor was merely
stalling or attempting to obstruct judicial process.
<u>Furness v. Lilienfield</u>, 35 B.R. 1006 (D. Md. 1983), <u>In
re St. Matthew Lutheran Church</u>, 1 C.B.C.2d 682 (Bankr.
C.D. Cal. 1986), <u>In re Erickson</u>, 26 B.R. 973 (Bankr.
C.D. Cal. 1983).  In other cases, there was some
evidence of fraudulent conduct on the part of the
debtor in concealing assets or in forming a new "debtor
entity" on the eve of bankruptcy to be the bankruptcy
debtor thereby frustrating the attempts of creditors to
reach the principals of the debtor entity or the real
debtors.  <u>In re O'Loughlin</u>, 40 B.R. 707 (Bankr. D.
Mass. 1984), <u>In re American Property Corp.</u>, 44 B.R. 180
(Bankr. M.D. Fla. 1984), <u>In re Herndon Executive
Center, Inc.</u>, 36 B.R. 803 (Bankr. M.D. Fla. 1984).

In this case, plaintiff's sole ground for
dismissal is that defendants filed their petition to
take advantage of the protection provided by 11 U.S.C.
541(a)(5)(A) and 11 U.S.C. 541(c)(2) to protect the
interests of Aileen R. Kragness in Hawaiian
testamentary trusts.  There are no allegations that the
debtors have failed to perform their duties under
Section 521 or that they have acted to conceal or
transfer assets, that they have made false oaths, that
they have formed corporate shells or other entities to
frustrate their creditors, etc.

<u>Id.</u> at 465.  The court then commented that it "has failed to
uncover any cases where a bankruptcy case was dismissed where the

debtors' sole motivation was to avail themselves of legitimate protection afforded by the Bankruptcy Code." Therefore, the court did not find bad faith in this case, and <u>Zick</u>'s reliance was on dicta. The <u>Kragness</u> court also refused to dismiss the case because the debtors' debts were not primarily consumer debts and it believed that Section 707(b) was the sole remedy for dismissal for ability to pay debts. <u>Id.</u> at 466.

Sixth, and finally, <u>Zick</u> cites Kentucky <u>Khan</u>, 35 B.R. 718 (W.D. Ky.) [sic, should be (Bankr. W.D. Ky. 1984)], <u>remanded for clarification</u>[28], 751 F.2d 162 (6th Cir. 1984) for the proposition that although Chapter 7 does not expressly require good faith, there is an "implicit jurisdictional requirement." Dr. Khan and his professional corporation were dismissed from a Chapter 11 case on November 10, 1983 for "bad faith" and "abuse of process." 35 B.R. at 718. He and the corporation refiled a Chapter 7 case shortly thereafter. On December 5, 1983, the court, sua sponte, entered orders to show cause why the cases should not be dismissed, "act[ing] unilaterally to protect [the court's] jurisdictional integrity." <u>Id.</u> The Court then, by reference,

---

[28]In <u>Kragness</u>, 63 B.R. at 465-66, the court stated that "[Kentucky] <u>Khan</u> is of questionable precedential value since it was remanded by the Sixth Circuit Court of Appeals." "Since we are unable to discern from the bankruptcy court's opinion the factors that the court relied on in dismissing Khan's Chapter 7 petitions, we remand the case to the district court with instructions to remand to the bankruptcy court for clarification." 751 F.2d at 164. And, after the Sixth Circuit's remand there are no further published opinions.

incorporated all of its findings of fact and conclusions of law
from the Chapter 11 dismissal. Id. At the show cause hearing,
Khan argued that the good faith requirement for Chapter 11 did
not transfer into Chapter 7, or, if it did, it should be some
lesser standard. Id. at 719. The court rejected this argument
outright, stating that "[i]t is at odds with a long line of
Supreme Court pronouncements regarding the scope and purpose of
bankruptcy relief, and would make a mockery of the Code." Id.
The court cited six United States Supreme Court cases in support
of its statement. Id. The court then acknowledged that the Code
does not expressly require "good faith" but declared that it was
an implicit jurisdictional requirement. Id.

First, Kentucky Khan cites Brown v. Felsen, 442 U.S. 127
(1979). In that case, the Supreme Court explained:

> Through discharge, the Bankruptcy Act provides "a new
> opportunity in life and a clear field for future
> effort, unhampered by the pressure and discouragement
> of preexisting debt," Local Loan Co. v. Hunt, 292 U.S.
> 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). By
> seeking discharge, however, respondent placed the
> rectitude of his prior dealings squarely in issue, for,
> as the Court has noted, the Act limits that opportunity
> to the "honest but unfortunate debtor." Ibid. Section
> 14 of the Act, 11 U.S.C. § 32, specifies that a debtor
> may not obtain a discharge if he has committed certain
> crimes or offenses. Section 17a, the focus of this
> case, provides that certain types of debts are not
> affected by a discharge. These include, under §
> 17a(2), "liabilities for obtaining money or property by
> false pretenses or false representations . . . or for
> willful and malicious conversion of the property of
> another" and, under § 17a(4), debts that "were created
> by his fraud, embezzlement, misappropriation, or

Page -46-

> defalcation while acting as an officer or in any
> fiduciary capacity."

442 U.S. at 128-29. (Footnote omitted.)  Basically, the Supreme

Court is stating the obvious: if a debtor has committed acts

before bankruptcy that result in nondischargeable debts, then the

bankruptcy will not discharge them.  Despite <u>Khan</u>'s

characterization, this case does not discuss eligibility to file,

good faith, or the court's jurisdiction.  And, it does not end up

dismissing the case.

Second, Kentucky <u>Khan</u> cites <u>Bruning v. United States</u>, 376

U.S. 358 (1964).  In <u>Bruning</u> the parties were arguing over

whether interest should accrue on nondischargeable tax debts.

<u>Id.</u> at 361.  The Supreme Court ruled in favor of the government:

> We find no indication in the wording or history of s
> 6873(a) that the section was meant to limit the
> Government's right to continuing interest on an
> undischarged and unpaid tax liability.  Nor is
> petitioner aided by the now-familiar principle that one
> main purpose of the Bankruptcy Act is to let the honest
> debtor begin his financial life anew.  As the Court of
> Appeals noted, s 17 is not a compassionate section for
> debtors. Rather, it demonstrates congressional judgment
> that certain problems-e.g., those of financing
> government-override the value of giving the debtor a
> wholly fresh start.  Congress clearly intended that
> personal liability for unpaid tax debts survive
> bankruptcy.  The general humanitarian purpose of the
> Bankruptcy Act provides no reason to believe that
> Congress had a different intention with regard to
> personal liability for the interest on such debts.

<u>Id.</u> at 361. (Footnote omitted.)  Despite <u>Khan</u>'s characterization,

this case does not discuss eligibility to file, good faith, or

the court's jurisdiction.  Nor does it dismiss a debtor's case.

Page  -47-

Third, Kentucky <u>Khan</u> cites the famous case of <u>Local Loan Co.</u> <u>v. Hunt</u>, 292 U.S. 234 (1933).  Virtually all of the good faith filing requirement cases quote <u>Local Loan</u>'s statement "One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh...'".  <u>Id.</u> at 244.  However, this snippet is taken out of context.  The whole passage states:

> One of the primary purposes of the Bankruptcy Act is to 'relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon **business misfortunes.**'  This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that **it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.** The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act.  Local rules subversive of that result cannot be accepted as controlling the action of a federal court.
>
> When a person assigns future wages, he, in effect, pledges his future earning power.  The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much if not more than it is a property right.  To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern.  From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor.  Pauperism may be the necessary result of either.  The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new

Page -48-

opportunity in life and the clear field for future
effort, which it is the purpose of the Bankruptcy Act
to afford the emancipated debtor, would be of little
value to the wage-earner if he were obliged to face the
necessity of devoting the whole or a considerable
portion of his earnings for an indefinite time in the
future to the payment of indebtedness incurred prior to
his bankruptcy.

Id. at 244-45. (Emphasis added; citations omitted.) Despite

Khan's characterization, Local Loan does not discuss eligibility

to file, good faith, or the court's jurisdiction. Rather, the

case stands for, among others, the proposition that an honest

business debtor, willing to surrender his property, should have a

new opportunity in life.

Fourth, Kentucky Khan cites Shapiro v. Wilgus, 287 U.S. 348

(1932). In that case Mr. Robinson was a dealer in lumber in

Philadelphia. Id. at 143. He was having trouble paying debts

when due, but estimated his equity as over $100,000 after paying

his debts in full, which he could do only if the creditors

cooperated. Id. Two creditors refused and threatened suit. Id.

Pennsylvania law did not allow the appointment of a receiver for

an individual. Id. Therefore, Robinson incorporated a Delaware

corporation and transferred all assets to it and it assumed all

debts. Id. Three days later, Robinson brought suit in Delaware

federal court asking for a receiver for the corporation and an

injunction against creditors. Id. The court appointed receivers

and enjoined all creditors unless permitted by the court. Id.

Case 10-13203-j7   Doc 50   Filed 03/16/11   Entered 03/16/11 15:28:46 Page 49 of 66

Shapiro then filed suit against Robinson and obtained a judgment.  _Id._  Shapiro took this judgment to the Delaware court claiming that the conveyance by Robinson to the corporation was a scheme to hinder and delay creditors, and asked that as a judgment creditor he be allowed to seize property in the receiver's possession and to sell it to satisfy his debt.  _Id._ at 143-44.  The request was denied, and the denial affirmed on appeal.  _Id._ at 144.

The Supreme Court found that the original transfer was fraudulent.  _Id._  It remanded the case to the District Court to enter an order in the alternative either 1) for payment of the judgment out of the funds in the hands of the receivers or 2) an order allowing execution against the assets.  _Id._  The Supreme Court did not dismiss the case as filed in bad faith.  It basically granted stay relief.  It did not discuss eligibility to file or jurisdiction.

Fifth, Kentucky _Khan_ cites _Stellwagen v. Clum_, 245 U.S. 605 (1918).  This case does not discuss good faith, eligibility to file, or jurisdiction.  Rather, in dicta it states the policy of bankruptcy:

> The federal system of bankruptcy is designed not only to distribute the property of the debtor, not by law exempted, fairly and equally among his creditors, but as a main purpose of the act, intends to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character, after the property which he owned at the time of bankruptcy has been administered for the benefit of creditors. Our

> decisions lay great stress upon this feature of the
> law-as one not only of private but of great public
> interest in that it secures to the unfortunate debtor,
> who surrenders his property for distribution, a new
> opportunity in life.

Id. at 617.  In fact, this case reinforces the concepts behind

the language omitted by most courts when quoting Local Loan.

That is, an honest debtor who surrenders property gets a new

start in life.  It did not dismiss the case.

Sixth, Kentucky Khan cites Williams v. United States

Fidelity & Guaranty Co., 236 U.S. 549 (1915).  Despite Khan's

characterization, this case does not discuss good faith,

eligibility to file, or jurisdiction.  One relevant paragraph

states:

> It is the purpose of the bankrupt act to convert the
> assets of the bankrupt into cash for distribution among
> creditors, and then to relieve the honest debtor from
> the weight of oppressive indebtedness, and permit him
> to start afresh free from the obligations and
> responsibilities consequent upon business misfortunes.
> And nothing is better settled than that statutes should
> be sensibly construed, with a view to effectuating the
> legislative intent.

Id. at 554-55. (Citations omitted).  Again, this case reinforces

the concepts behind the language omitted by most courts when

quoting Local Loan.  That is, an honest debtor, especially one

with "business misfortunes," who surrenders property gets a new

start in life.

Seventh, and finally, Kentucky Khan cites Whetmore v.

Markoe, 196 U.S. 68 (1904).  Despite Khan's characterization,

this case does not discuss good faith, eligibility to file, or jurisdiction.  It is an alimony/dischargeability case.  The Court did not dismiss the case, it declared a debt nondischargeable. Id. at 76.  It reinforces the concept that business debtors should be able to find relief from business misfortunes:

> Systems of bankruptcy are designed to relieve the honest debtor from the weight of indebtedness which has become oppressive, and to permit him to have a fresh start in business or commercial life, freed from the obligation and responsibilities which may have resulted from business misfortunes.  Unless positively required by direct enactment the courts should not presume a design upon the part of Congress, in relieving the unfortunate debtor, to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children.

Id.

In sum, most of these Supreme Court cases discuss the honest, unfortunate debtor afloat in a sea of indebtedness. None, however, specifically discuss a good faith filing requirement for Chapter 7 or jurisdiction of the courts. Zick and Kentucky Khan both read between the lines of these cases and make a leap to find a good faith filing requirement that is "implicitly jurisdictional"[29] but explicitly absent.  This Court

_____

[29]This Court also agrees with the Minnesota Khan case's comment on the use of the term "jurisdictional."
> [T]he analysis in many of these opinions [finding a good faith filing requirement for chapter 7] opens with a sweeping pronouncement that good faith in the filing of a Chapter 7 petition is "an implicit jurisdictional requirement."  This sentiment sounds all
>                                     (continued...)

Page  -52-

is not convinced.  Furthermore, if good faith were an implicit

jurisdictional requirement, Congress would not have needed to

_____

[29](...continued)
very noble, but it has more resonance for a layperson's
perception of the judicial process than for a
professional's understanding of it.  Such
pronouncements are never accompanied by a statutory
citation, and for a good reason: there is none.
Minnesota Khan, 172 B.R. at 621.
        In the bankruptcy context, "jurisdiction" is the
basic ability of the United States District Court to
exercise the power of the federal government over a
debtor and its pre-bankruptcy legal relationships with
its creditors.  Jurisdiction over bankruptcy cases and
proceedings is conferred by 28 U.S.C. §§ 1334(a)-(b).
These provisions empower the District Court to
automatically assume jurisdiction in a voluntary
bankruptcy case once a debtor performs the simple,
ministerial act of filing a petition for relief under
Title 11, pursuant to 11 U.S.C. §§ 301 and 302.
Id. (footnotes omitted.)
        Nowhere do any of these statutes, by their terms,
require a debtor in a voluntary case to plead or attest
to his or her good faith on the face of a petition, as
a prerequisite to the opening of a case file in the
bankruptcy court or as a preliminary to the assumption
by that court of judicial authority over the debtor and
its creditors.  Zick and the other cases that posit
good faith as a looming "jurisdictional requirement,"
then, position the issue at a level far too basic in
the legal superstructure of the bankruptcy process.
Id. at 622.

specify "good faith" thirty-four times[30] and "bad faith" three
times in the Code.

**3.  The evils addressed by other, more specific statutes are not "cause."**

The bankruptcy code contains many sections that provide
specific remedies for specific actions.  For example, section 523

---

[30]The term "good faith" is made applicable to debtors
seventeen times in the following: Section 109(c) (eligibility of
Chapter 9 debtors), Section 362(c)(3)(B) (repeat filer must prove
latter filing is in good faith to extend the stay past thirty
days), Section 362(c)(3)(C) (repeat filer is deemed not to be in
good faith if certain conditions met), Section 362(c)(4)(B)
(repeat filer must prove latter filing is in good faith to extend
the stay past thirty days), Section 362(c)(4)(D) (repeat filer is
deemed not to be in good faith if certain conditions met),
Section 362(i) (if a case is dismissed due to the creation of a
debt repayment plan, a subsequent filing "shall not be presumed
to be filed not in good faith."), Section 521(i)(4) (a trustee
may request that a case not be dismissed for the debtor's failure
to file documents if the debtor attempted in good faith to
comply), Section 727(a)(9) (after a chapter 12 or 13 discharge, a
debtor that files a chapter 7 within certain time period may not
receive discharge unless the prior case was proposed in good
faith and was the debtor's best effort), Section 901(a) (chapter
9 debtor must propose plan in good faith), Section 921(c) (Court
may dismiss chapter 9 if not filed in good faith), Section
1113(b)(2) (debtor must meet with representative in good faith
before rejecting collective bargaining agreement), Section
1114(f)(2) (debtor must meet with representative in good faith
before modifying retiree benefits), Section 1129(a)(3) (to be
confirmable, plan must be proposed in good faith), Section
1173(a)(1) (railroad plan must be proposed in good faith),
Section 1225(a)(3) (to be confirmable, plan must be proposed in
good faith), Section 1325(a)(3) (to be confirmable, plan must be
proposed in good faith), and Section 1325(a)(7) (to be
confirmable, debtor must have filed the petition in good faith).
The term "good faith" is made applicable to creditors eight
times.  The term "good faith" is made applicable to transferees
or good faith purchasers six times.  And, it applies once each to
debtors to the debtor, a debtor's insurer, and to plan
proponents.

contains a list of nineteen different categories of debts that are not discharged in chapter 7.  Section 727 contains a list of behaviors that will prevent a debtor's discharge altogether. Section 362(b) prevents the automatic stay from applying to criminal or police power matters and to certain, defined, actions that commence or continue matters against a debtor.  Section 362(d)(1) allows a court to terminate the automatic stay for "cause," which can include things such as prejudice to a creditor that was ready for trial in a nonbankruptcy forum.  In re SCO Group, Inc., 395 B.R. 852, 860 (Bankr. D. Del. 2007).  Sections 362(c)(3) and (4) severely limit automatic stay protections for repeat filers.  Section 522(g) prevents a debtor from exempting property voluntarily transferred before the bankruptcy filing. Sections 547 and 548 allow a trustee to recover money or other property transferred preferentially or fraudulently.  Section 549 allows a trustee to recover property transferred post-petition that was not authorized by the court.

If any of the evils addressed by these statutes were "cause" to dismiss a chapter 7 case all of these statutes would be meaningless.  For example, if a debtor incurred a debt by fraud or failed to keep business records, instead of having the debt declared nondischargeable or having the discharge denied, the creditor could simply have the case dismissed.  There would be no need for the remedial statute, rendering all of them superfluous.

This conclusion derives from the rule of statutory construction that a court should not read a statute in a way that makes other parts of the same statute nugatory.  Kawaauhau v. Geiger, 523 U.S. 57, 62 (1998):

> "[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988).  Reading § 523(a)(6) as the Kawaauhaus urge [i.e., damages from an intentional act that necessarily lead to injury, as opposed to a deliberate or intentional injury] would obviate the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9)[.]

See also TRW, Inc. v. Andrews, 534 U.S. 19, 31 (2001):

> It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." Duncan v. Walker, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted); see United States v. Menasche, 348 U.S. 528, 538-539, 75 S.Ct. 513, 99 L.Ed. 615 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.' " (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S.Ct. 391, 27 L.Ed. 431 (1883))).  "[W]ere we to adopt [Andrews'] construction of the statute," the express exception would be rendered "insignificant, if not wholly superfluous." Duncan, 533 U.S., at 174, 121 S.Ct. 2120.  We are "reluctant to treat statutory terms as surplusage in any setting," ibid. (internal alteration and quotation marks omitted), and we decline to do so here.

(Footnote omitted).

This conclusion also derives from the rule of statutory construction that if both a specific and a general statute apply to the same set of facts, the specific statute is applicable and the general is not. Bulova Watch Co., Inc. v. United States, 365 U.S. 753, 758 (1961); Padilla, 222 F.3d at 1192; Minnesota Khan, 172 B.R. at 624; Kimlinger and Wassweiler, 13 Bankr. Dev. J. at 72:

> By constructing a variety of remedies and safeguards which correspond to particular categories of debtor misconduct, Congress developed a methodology for determining what types of remedies should be available for prohibited conduct. Courts must construe the provisions contained in the methodology to be consistent with one another and to be nonsuperfluous. See In re Khan, 172 B.R. 613, 624 (Bankr. D. Minn. 1994) (citing Helvering v. Credit Alliance Corp., 316 U.S. 107 (1942); Koenigsberger v. Richmond Silver Mining Co., 158 U.S. 41 (1895)). In light of the rule of statutory construction that a specific provision takes precedence over a general one, see United States v. Cihal, 336 F. Supp. 261, 267 (W.D. Pa. 1972), aff'd, 497 F.2d 922 (3d Cir. 1974), debtor misconduct should be analyzed under the provision which specifically corresponds to that type of misconduct, and should not be analyzed under a more general provision which penalizes the debtor for "cause." In the Khan decision, Judge Kishel noted:
>> To do full justice to the canons of (statutory) construction . . . (cause for dismissal under S 707(a)) should not consist solely of anything that, in isolation, would merit a more limited form of punitive sanction; Congress must be deemed to have spoken to those evils by already setting up the other remedies. . . . In creating these more circumscribed remedies, Congress clearly contemplated that a bankruptcy case could proceed to dispense remedies to creditors, notwithstanding the debtor's past commission of certain proscribed acts that contravened public policy. Individual creditors or the trustee can seek more particularized redress under SS 522, 523, or 727,

Page -57-

> without the detriment of losing the centralized
> remedy of administration of assets that dismissal
> would otherwise cause.
>
> 172 B.R. at 624 (citing <u>In re Lang</u>, 5 B.R. 371, 375
> (Bankr. S.D. N.Y. 1980)).

Provisions of the Bankruptcy Code provide specific remedies for specific problems. Treating any of them as grounds to dismiss a case under the guise of "cause" is a misapplication. <u>In re Motaharnia</u>, 215 B.R. 63, 68-69 (Bankr. C.D. Cal. 1997):

> In determining whether bad faith constitutes cause
> under § 707(a), courts should adopt a narrow
> construction of the Code. Otherwise, it is possible
> that such an "inquiry will be 'employed as a loose
> cannon which is to be pointed in the direction of a
> debtor whose values do not coincide precisely with
> those of the court.' " <u>Huckfeldt</u>, 39 F.3d at 832,
> citing <u>In re Latimer</u>, 82 B.R. 354, 364 (Bankr. E.D. Pa.
> 1988). Additionally, an underlying policy of the
> Bankruptcy Code, providing debtors with a fresh start
> while ensuring there is no abuse of the system,
> mandates such a strict interpretation of § 707(a)'s
> "cause" analysis. As such, bad faith as grounds for
> "cause" under § 707(a) should apply only to egregious
> cases where the debtor's motives are clearly
> inconsistent with the established purpose of the
> Bankruptcy Code.
> ...
> The debtors' motivations in filing bankruptcy and
> their actions as debtors throughout the bankruptcy
> process have been consistent with the underlying
> policies of our bankruptcy system. The Debtors seek a
> discharge of all of their dischargeable debts under
> chapter 7. They have filed all schedules and
> statements of affairs, have apparently disclosed all
> their assets and liabilities, have provided the
> trustees with the appropriate financial records to
> support their schedules, and are not attempting to use
> the bankruptcy process for any ulterior motives such as
> to intentionally and selectively injure a specific
> creditor. Therefore, because they have been acting
> within the purview of chapter 7, this Court finds that
> the particular facts ... do not amount to cause for
> dismissal under § 707(a).

Page -58-

**B.** **Things that are "cause".**

Although arguably slightly outdated after BAPCPA, the
Minnesota <u>Khan</u> case provides a thoughtful analysis of what
demonstrates cause for Section 707(a) relief.

> "Good faith" and its absence necessarily being
> subjective factors, the Court should look first at the
> debtor's manifested attitude toward the integrity of
> the bankruptcy process.  The real question should be
> whether the debtor is in bankruptcy with an intent to
> receive the sort of relief that Congress made available
> to petitioners under the chapter in question-subject,
> of course, to any statutory limitations on the extent
> of that relief-and is willing to responsibly carry out
> the duties that Congress imposes on debtors as the cost
> of receiving such relief.
> With the subject so identified, bad faith in the
> filing of a Chapter 7 petition would be evidenced by a
> pervasive and orchestrated effort on the part of the
> debtor to obtain the benefits of a bankruptcy filing
> while at the same time intentionally and fraudulently
> taking action to avoid any of the detriments. Such an
> effort might involve an intention to file solely to
> interpose the automatic stay of 11 U.S.C. § 362(a)
> against pending litigation or foreclosure, without a
> concomitant acceptance of the statutory duties of
> financial disclosure, cooperation with the trustee, and
> surrender of non-exempt assets.  It might also be
> prompted by a vindictive motivation to use bankruptcy
> solely as a "scorched-earth" tactic against a pressing
> creditor or opponent in litigation.
> Of necessity, a "bad faith filing" would involve
> manifested dishonesty toward a legal tribunal. That
> tribunal, of course, could be the forum Bankruptcy
> Court.  However, it could be another court that had
> jurisdiction over the debtor in a pre-petition
> proceeding, and from whose jurisdiction the debtor is
> seeking refuge in bankruptcy. Credible evidence that
> the debtor is seeking to use the Bankruptcy Court's
> jurisdiction to hide from an adjudication of contempt
> in a nonbankruptcy court, without justification in the
> form of true financial distress, would support a
> finding of bad faith in filing.

Page  -59-

<u>Khan</u>, 172 B.R. at 625-26 (citations and footnote omitted), and at 625 n.23:

> Pre- or post-filing actions in connection with the bankruptcy case that could support the finding would consist of systemic and deliberate misstatements or omissions on bankruptcy schedules; knowingly false testimony at a meeting of creditors or a court hearing; and intentional acts to hinder the trustee in the administration of the estate and the investigation in connection with it. To taint the whole filing, there should be something more than an isolated instance or two of such conduct. A single such infraction, or even scattered ones, might merit one of the more limited sanctions, but they probably would not compel an inference of the sort of permeating animus that "bad faith" entails.

## DECISION ON DISMISSAL

The Court finds that there is not a good faith requirement for a non-consumer business debtor to file a Chapter 7 case. Even if there were such a requirement, GRMC and Barton have failed to prove by a preponderance of the evidence that Debtor initiated this Chapter 7 case in bad faith. To the extent only an honest and deserving debtor is eligible to file a Chapter 7 petition, the Court finds that the Debtor is eligible. The facts elucidated and arguments made by GRMC and Barton are addressable by less drastic remedies than dismissal. For example, to the extent they established facts[31] which could suggest that a trustee could recover preferences or fraudulent transfers, the

---

[31]Debtor did not attempt to disprove or explain some of the evidence offered, nor did he have to. Much of it was not relevant to the issue of dismissal or conversion; this was not an adversary proceeding seeking to recover transfers.

Page -60-

case trustee is fully competent to investigate those transfers and recover them if proper. The Court therefore finds that the transactions alleged do not constitute cause. Finally, the Court finds Debtor's testimony regarding omitted items credible, and finds no evidence that Debtor attempted to hide assets or hinder their discovery.

**CONVERSION**

Section 706(b) provides: "On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time." This section is not mandatory; the Court should use its discretion in any decision to convert. See H.R. Rep. No. 595, 95th Cong., 1st Sess. at 380 (1977)("The decision whether to convert is left in the sound discretion of the court, based on what will most insure [sic] to the benefit of all parties in interest."); S.Rep. No. 95-989, 95th Cong., 2d Sess. at 94 (1978) ("The decision whether to convert is left in the sound discretion of the court, based on what will most inure to the benefit of all parties in interest.")

"[T]he policy of Chapter 11 is to permit successful rehabilitation of debtors[.]" Nat'l Labor Relations Board v. Bildisco and Bildisco, 465 U.S. 513, 527 (1984). "Determining what would constitute a successful rehabilitation involves balancing the interests of the affected parties–the debtor,

Page  -61-

creditors, and employees." <u>Id.</u> "Chapter 11 also embodies the general Code policy of maximizing the value of the bankruptcy estate." <u>Toibb</u>, 501 U.S. at 163 (citing <u>Commodity Future Trading Comm'n v. Weintraub</u>, 471 U.S. 343, 351-54 (1985)).

Section 706(b) does not identify any specific grounds to order conversion. Therefore, a Court should consider anything relevant that would further the goals of the Bankruptcy Code.

In this case GRMC and Barton do not suggest any additional reasons for converting the case to Chapter 11 than they do for dismissing it under Section 707(a). Obviously, dismissal of the case would allow them to pursue Debtor in state court and might result in direct garnishments of his salary. Absent a dismissal, they seek conversion to increase their returns over that they will receive in liquidation by capturing Debtor's post-petition

personal service income[32].  Therefore, conversion would further

the policy of maximization of the estate set out in Toibb.

However, conversion to Chapter 11 would not further the

interests of the Debtor or those that depend on him for support.

The obviously apparent reasons for the existence of a bankruptcy

law available to individuals is to discharge debt and provide a

fresh start.  If the Court were to order conversion of this case

to Chapter 11, the Debtor would be unable to automatically

reconvert it to Chapter 7.  See Section 1112(a)(3) ("The debtor

may convert a case under this chapter to a case under chapter 7

---

[32]See Section 1115(a), added by BAPCPA:
In a case in which the debtor is an individual,
property of the estate includes, in addition to the
property specified in section 541--
(1) all property of the kind specified in section 541
that the debtor acquires after the commencement of the
case but before the case is closed, dismissed, or
converted to a case under chapter 7, 12, or 13,
whichever occurs first; and
(2) earnings from services performed by the debtor
after the commencement of the case but before the case
is closed, dismissed, or converted to a case under
chapter 7, 12, or 13, whichever occurs first.
(Emphasis added.)  Compare Section 541(a):
The commencement of a case under section 301, 302, or
303 of this title creates an estate.  Such estate is
comprised of all the following property, wherever
located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of
this section, all legal or equitable interests of the
debtor in property as of the commencement of the case.
...
(6) Proceeds, product, offspring, rents, or profits of
or from property of the estate, except such as are
earnings from services performed by an individual
debtor after the commencement of the case.
(Emphasis added.)

Page  -63-

of this title unless– ... (3) the case was converted to a case

under this chapter other than on the debtor's request.")

Instead, he would be trapped[33] in a Chapter 11 proceeding that he

---

[33]The parties did not raise, and the Court makes no ruling on whether there are Constitutional issues involved in this situation. See Toibb, 501 U.S. at 165-66:

> [T]he argument [of amicus] overlooks Congress' primary concern about a debtor's being forced into bankruptcy under Chapter 13: that such a debtor, whose future wages are not exempt from the bankruptcy estate, § 1322(a)(1), would be compelled to toil for the benefit of creditors in violation of the Thirteenth Amendment's involuntary servitude prohibition. See H.R.Rep. No. 95-595, at 120. Because there is no comparable provision in Chapter 11 requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization.

BAPCPA changed this. After BAPCPA consumer debtors that fail the means test have the choice of dismissal or conversion to Chapter 11 or 13. See Section 707(b). And, BAPCPA expanded the Chapter 11 estate to include post-petition personal service income as does the Chapter 13 estate. Previously Congress was worried about imposing involuntary servitude on Chapter 13 debtors. Now, however, by allowing creditors to force conversion of a Chapter 7 debtor's case to Chapter 11, coupled with an inability of the debtor to voluntarily reconvert or dismiss and the inclusion of the debtor's post-petition income, Congress may have created the setting for a constitutional challenge. Compare Fitzsimmons v. Walsh (In re Fitzsimmons), 20 B.R. 237, 240 (9th Cir. BAP 1982), aff'd. and remanded, 725 F.2d 1208 (9th Cir. 1984)(pre-BAPCPA case)(Section 706(c) does not permit involuntary conversion to chapter 13 because of concern that post-bankruptcy earnings may not be involuntarily impounded)(Remanded for a determination of amount of income attributable to personal services income). See also Misuraca v. U.S. Trustee, 2009 WL 1212471 (D. Ariz. 2009)(Bankruptcy court found 707(b) abuse and ordered dismissal. Debtor sought a stay pending appeal because he would be forced to convert to chapter 11, being ineligible for a chapter 13, and argued a violation of the Thirteenth Amendment. The District Court denied the stay and dismissed as not ripe, because the Debtor had the choice of dismissing and was not in fact in a Chapter 11.)

does not need and does not want.  There is no business to
reorganize.  This is not the fresh start than Congress
envisioned.  Balancing this consideration against the increased
estate, the Court finds that the case should not be converted to
Chapter 11.

At least one case has ruled that one element a creditor must
establish to convert a case to Chapter 11 is to demonstrate the
probability of a confirmable plan of reorganization.  <u>In re Wet-
Jet Int'l, Inc.</u>, 235 B.R. 142, 153 (Bankr. D. Mass. 1999).  To
the extent this is true, GRMC and Barton have failed to prove the
probability of a confirmable plan.  On the other hand, while
Debtor suggested that no plan would be confirmable based on his
tax debt and other expenses, he also failed to prove his
contention to any degree.

**<u>DECISION ON CONVERSION</u>**

For the reasons stated, the Court will deny the motion to
convert the case under Section 706(b).

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket:  March 16, 2011

Case 10-13203-j7   Doc 50   Filed 03/16/11   Entered 03/16/11 15:28:46 Page 65 of 66

Copies to:

Christopher M Gatton
Law Office of George Dave Giddens, PC
10400 Academy Rd., #350
Albuquerque, NM 87111

David T Thuma
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

Jason C Bousliman
PO Box 2168
Albuquerque, NM 87103-2168

Kieran F. Ryan
Trustee
PO Box 26
Las Cruces, NM 88004-0026

Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608